IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYNERGY GLOBAL OUTSOURCING, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 21 C 5652 |
| HGS HEALTHCARE OPEATIONS INC.; HGS USA, LLC; HGS HEALTHCARE, LLC; BETAINE (US) BIDCO, INC.; BETAINE (US) HOLDINGS, INC.; BETAINE (US) HOLDCO 2, INC; and BETAINE (US) ACQUISITIONCO INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In its second amended complaint in this case, which was filed in federal court based on diversity of citizenship, Synergy Global Outsourcing, LLC alleges that it worked as a business broker for HGS Healthcare Operations, Inc. and its predecessor entities. Specifically, it assisted HGS and its affiliated entities in obtaining new customers and in maintaining ongoing customer relationships. Synergy performed this work under a written Broker Agreement, under which it was paid a commission consisting of a percentage of revenue generated by customers that Synergy had introduced to HGS.

After 17 years, in September 2019, HGS, which is based in Illinois, stopped paying Synergy. Synergy, which is headquartered in Texas, then filed suit in Texas

state court against HGS and affiliated entities. It sued for breach of the Broker Agreement and asserted other related claims, alleging it is owed over $19 million. That case remains pending in Texas state court.

Synergy filed the present lawsuit in October 2021. It alleges that during the course of the Texas lawsuit, HGS's immediate parent company and ultimate parent company entered into an agreement to sell HGS to Betaine B.V, an affiliate of a Hong Kong-based private equity firm called Baring Private Equity Asia. According to Synergy, Betaine acquired HGS "with the intention to dismantle it and reorganize its assets into a new healthcare outsourcing entity." 2d Am. Comp. ¶ 4. The acquisition was completed in January 6, 2022, after this lawsuit was filed, allegedly "leaving HGS Healthcare as an empty shell company; and Synergy with no practical recourse to collect from HGS Healthcare its unpaid contractual obligations or a potential judgment." *Id*.; *see also id.* ¶ 40.

In the present lawsuit, filed against HGS and related entities (the HGS defendants) and Betaine (US) Bidco, Inc. and other related entities (the Baring defendants), Synergy seeks, under a provision of the Broker Agreement, a declaratory judgment that any contractual obligations or liabilities owed by HGS to Synergy under the Broker Agreement or other agreements will continue and remain unaffected by the sale to the Baring defendants; that any subsequent reorganization will not materially impact Synergy's rights under the Broker Agreement or other agreements or any potential judgment in the Texas case; and that a particular provision of the Broker Agreement regarding the effect of a change of control of a party is enforceable under Texas law. *Id.* ¶ 53. Synergy also asserts a second claim in which it alleges a violation

of the Illinois Uniform Fraudulent Transfer Act in connection with the sale of HGS's assets. In its prayer for relief, Synergy requests, in addition to the just-mentioned declaratory judgment, an aware of damages, as well as any available remedies under the IUFTA, including avoidance of the transfer, an injunction against further disposition, and so on. *Id.* ¶ 63.

The defendants have moved to dismiss Synergy's complaint. First, they ask the Court under the so-called *Wilton/Brillhart* doctrine to exercise its discretion to decline jurisdiction of the declaratory judgment claim, contending that the claim involves issues already pending in the Texas lawsuit. Second, the defendants ask the Court to stay proceedings in this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), based on the pendency of the Texas case. The defendants also argue under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) that the declaratory judgment and IUFTA claims are deficient on their face for various reasons.

1. ***Wilton/Brillhart***

Under the *Wilton/Brillhart* doctrine, the name of which comes from *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), a federal court may decline to exercise jurisdiction over a claim for a declaratory judgment after weighing "considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. The doctrine applies when a court is asked to proceed on a declaratory judgment claim "where another suit is pending in a state court proceeding presenting the same issues, not governed by federal law, between the same parties." *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (quoting

*Brillhart*, 316 U.S. at 495).

The Court excludes from consideration here Synergy's fraudulent transfer claim (count 2), which doesn't appear to seek a declaratory judgment, and focuses on count 1, Synergy's declaratory judgment claim. Defendants argue that the same issues as those presented on that claim are presented in the Texas suit. That's partly right and partly wrong. The key issues presented under count 1 in this case involve: (1) the contractual responsibility to Synergy of some or all of the Baring defendants following the transfer of HGS Healthcare's assets; and (2) the Baring defendants' responsibility for a judgment against HGS Healthcare in the Texas case if one is entered. Neither of these issues is presented in the Texas case; indeed, the Baring defendants—who presumably have something to say about these issues—aren't parties there. That said, issue (2) depends on a finding of liability in the Texas case.

The factors considered in determining whether to decline jurisdiction under *Wilton/Brillhart* include: (1) the scope of the pending state court case; (2) whether the claims of all parties can be adjudicated satisfactorily in that case; (3) whether a judgment in the state court case will settle the controversy; (4) whether a declaratory judgment would serve a useful purpose in clarifying the legal relations at issue; (5) whether the declaratory remedy is being used for "procedural fencing" or as part of a "race for *res judicata*"; (6) whether use of the declaratory action would increase federal-state friction or encroach upon state jurisdiction; and (7) whether there is another more effective remedy. See *NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (factors 3-7); *Brillhart*, 316 U.S. at 495 (factors 1-2).

The Court has considered these factors. As indicated, the issue of the Baring

defendants' responsibility for a judgment in the Texas case depends, of course, on a judgment being issued there in Synergy's favor. There's no particularly beneficial purpose in using a declaratory judgment action to determine whether the Baring defendants will be liable for a Texas judgment that may never be issued. But issue (1) concerns the *current* relationship between Synergy and the other contracting party—specifically, whether the entity or entities that acquired HGS's assets are liable on an ongoing basis to Synergy under the Broker Agreement or other agreements it might have had with HGS—and there's no basis to believe that point will be determined in the Texas case. Because there is a claim of ongoing contractual responsibility, the Court concludes that under *Wilton/Brillhart* there is not an appropriate basis to decline jurisdiction over the declaratory judgment claim as it relates to current and ongoing liability under the claimed contract(s). By contrast, adjudicating the declaratory judgment claim to the extent it concerns liability for a judgment in the Texas case would unnecessarily overlap with that case and would risk interference with the orderly progress of the Texas lawsuit.

2. ***Colorado River***

Consideration of the defendants' request for *Colorado River* abstention leads the Court to essentially the same conclusion just discussed. Under *Colorado River*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, and it may be invoked only in "exceptional circumstances" in which abstention "would clearly serve an important countervailing interest." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1996) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). A

5

court conducts a two-part inquiry to determine if abstention is appropriate under *Colorado River*. First, the court determines whether the state and federal suits are parallel. If they are, the court then considers several factors to determine if there are exceptional circumstances that justify abstention. *Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006).

This case and the Texas case are parallel to the extent that they both involve the Broker Agreement (and any related agreements) and the liability of HGS. They are also parallel to the extent that Synergy's declaratory judgment and fraudulent transfer claims are geared at obtaining a judgment that one or more of the Baring defendants is responsible for any judgment in the Texas case. But the claim in the present case that the Baring defendants assumed HGS's ongoing contractual obligations has not been shown to be parallel to any claim in the Texas case. (The Court is not so naïve as to think that there's nothing in the Texas case that might touch on this issue in some way, but the fact is that Synergy can't get a judgment regarding the Baring defendants' claimed ongoing contractual responsibility in the Texas case, as they aren't parties there.)

Once a court determines under *Colorado River* that there are parallel claims, it considers ten factors that come from guidance in *Colorado River* and in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 23-27 (1983). They are:

> 1) whether the [other court] has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the current forums; 5) the source of governing law, state or federal; 6) the adequacy of [other] action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

6

*Tyrer*, 456 F.3d at 755. In determining whether exceptional circumstances exist, there remains a "general presumption against abstention." *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003).

There's no property over which either court has exercised jurisdiction (factor 1). The federal forum certainly isn't inconvenient to HGS, because it is located here (factor 2). The interest in avoiding piecemeal litigation is significant here as it relates to the claims by Synergy in the present case seeking an adjudication of responsibility for a potential judgment in the Texas case and for a transfer of assets claimed to have been made fraudulently to avoid responsibility in that case (factor 3). The Texas case obviously came first (factor 4), but defendants haven't offered any meaningful information about how far it has progressed (factor 7). Some of the governing law appears to be Texas law—with respect to interpretation of the contract—but the fraudulent transfer claim arises under Illinois law (factor 5). Synergy can't get a ruling in the Texas case regarding the Baring defendants' responsibility under the contract, as they aren't parties there (factor 6), and it there's no basis to believe they could be made parties there (factor 8, in part). The Texas case can't be removed to federal court (factor 9). There is no basis to believe that Synergy's federal claim is "contrived"; it has a legitimate basis to determine liability for the obligations it claims it is owed (factor 10).

As indicated, these factors lead the Court to essentially the same conclusion it reached regarding *Wilton/Brillhart*. There's no showing sufficient to lead the Court to decline to adjudicate Synergy's declaratory judgment claim regarding the Baring defendants' claimed responsibility under the Broker Agreement and related agreements, as Synergy can't get that in the Texas case and it's a significant current and ongoing

7

issue. But adjudicating the declaratory judgment claim as it relates to responsibility for a judgment in the Texas case would undermine the policy against piecemeal litigation. The same is true, in the Court's view, regarding the fraudulent transfer claim, which appears to be primarily aimed at securing resources to cover a potential judgment in the Texas case. The Court may alter its view on this last point as the present case and the Texas case progress.

The bottom line with regard to *Wilton/Brillhart* and *Colorado River* is as follows:

- The Court declines to exercise jurisdiction over Synergy's declaratory judgment claim to the extent it seeks an adjudication of responsibility for a judgment in the Texas case;
- The Court overrules defendants' request to decline jurisdiction over the declaratory judgment claim to the extent it seeks an adjudication of current and ongoing responsibility under the Broker Agreement and other related agreements; and
- Litigation of the fraudulent conveyance claim is stayed under *Colorado River* pending further order by the Court.

3.     **Ripeness/justiciability**

The defendants argue that there is no ripe or justiciable controversy that would warrant consideration of a declaratory judgment. That's borderline ridiculous. Synergy claims that it is entitled to monthly commission payments, and it isn't getting them. And now the party responsible under the parties' contract(s) is an "empty shell" as a result of a transfer of its assets. The question of who, if anyone, is responsible under the contract(s) is most certainly ripe and justiciable: Synergy contends that it is being

8

harmed on a month-by-month basis. The claim presents "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). *See generally Amling v. Harrow Indus. LLC*, 943 F.3d 373, 378 (7th Cir. 2019).

To the extent that defendants argue that Synergy doesn't have a ripe claim against *all* of the related entities it has named, the fact that the transactions were private basically has left Synergy in the dark about what happened. All it knows is that it isn't getting paid and that its contracting counterparty's assets have been sold. Identification of exactly which entity or entities among the HGS and Baring/Betaine families, if any, is responsible likewise presents a sufficiently immediate and live controversy to permit consideration of Synergy's request for a declaratory judgment.

### 4. Failure to state a claim

The Court can make relatively quick work of the defendants' arguments for dismissal under Rule 12(b)(6), which the Court will assess even as to the dismissed and stayed claims to make a complete record. On a motion to dismiss for failure to state a claim, the Court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and assesses whether the plaintiff has asserted a plausible basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581

9

F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678).

The fraudulent transfer claim is sufficiently pleaded. Some of Synergy's allegations are stated "on information and belief," but a plaintiff may allege circumstances of fraud in that way if the underlying facts aren't available to it and it provides the grounds for its suspicions. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). That's the case here. Synergy alleges that its counter-party's assets were transferred after it had stopped paying and in the middle of a lawsuit over the counter-party's obligations. It also alleges that the counter-party—HGS—is now insolvent. These and the other facts cited by Synergy given it a sufficient basis for its fraudulent transfer claim, even to the extent that it's an "actual fraud" claim under the IUFTA, and certainly to the extent it's a "constructive fraud" claim under that statute.

The defendants also contend that Synergy has not stated a claim against each and every one of the HGS defendants and Baring defendants it has sued. The Court disagrees, for the reasons discussed earlier on the ripeness issue. The transactions were conducted in private, and Synergy isn't privy to exactly what entities were involved or in what way. That's good enough for now. The Court trusts that if and when Synergy obtains via discovery information sufficient to identify which entities do and don't plausibly have liability, it will voluntarily dismiss them.

## Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss in part and denies them in part [dkt. nos. 77, 78]. As more fully described above:

- The Court declines to exercise jurisdiction over Synergy's declaratory judgment

claim to the extent it seeks an adjudication of responsibility for a judgment in the Texas case;

- The Court overrules defendants' request to decline jurisdiction over the declaratory judgment claim to the extent it seeks an adjudication of current and ongoing responsibility under the Broker Agreement and other related agreements;

- The Court stays litigation of the fraudulent conveyance claim under *Colorado River* pending further order by the Court;

- The Court denies defendants' motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6).

In addition, the Court grants plaintiff's motion for leave to file a third amended complaint [dkt. no. 82]. Plaintiff should now file the third amended complaint as a separate docket entry. Defendants' responses to the third amended complaint are to be filed by September 9, 2022. In addition, the parties are directed to meet and confer regarding a discovery and pretrial schedule and are to file by September 2, 2022 a joint status report with a proposed schedule, or alternative proposals if they cannot agree. The telephonic status hearing set for August 15, 2022 is vacated and reset to September 14, 2022 at 8:45 a.m., using call-in number 888-684-8852, access code 746-1053.

Date: August 14, 2022

_____
MATTHEW F. KENNELLY
United States District Judge