IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYNERGY GLOBAL OUTSOURCING, LLC,<br>        Plaintiff,<br><br>    vs.<br><br>SAGILITY OPERATIONS INC. F/K/A HGS HEALTHCARE OPERATIONS INC., HGS USA, LLC, SAGILITY LLC F/K/A HGS HEALTHCARE, LLC, BETAINE (US) BIDCO, INC., BETAINE (US) HOLDINGS, INC., AND BETAINE (US) ACQUISITIONCO INC.<br><br>        Defendant. | Case No. 21 C 5652 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Plaintiff Synergy Global Outsourcing has sued defendants Betaine (US) BidCo, Inc., Betaine (US) Holdings, Inc., Betaine (US) Acquisitionco Inc., Sagility Operations Inc. f/k/a HGS Healthcare Operations Inc., and Sagility LLC f/k/a HGS Healthcare (collectively, the "Baring defendants") and HGS USA, LLC (together with the Baring defendants, "defendants"). In Count 1 of its complaint, Synergy seeks a declaratory judgment regarding the contractual liabilities or obligations between it and the defendants. In Count 2, Synergy alleges the defendants violated the Illinois Uniform Fraudulent Transfer Act. In a previous decision, the Court determined to exercise its jurisdiction over the declaratory judgment claim only to the extent it seeks adjudication of current and ongoing responsibility of the parties under a contract called the Broker Agreement and other related agreements. The Court stayed litigation of the fraudulent

conveyance claim. There are four motions pending before the Court. The Baring defendants have moved for summary judgment against Synergy on Count 1. HGS USA, LLC has, separately, done the same. Synergy has moved to dismiss from Count 1 two of the defendants, Betaine (US) Acquisitionco Inc. and HGS USA, LLC. Synergy has also filed a cross motion for summary judgment regarding the other defendants on that claim. For the reasons below, the Court grants the defendants' motions for summary judgment on Count 1 and denies Synergy's cross motion for summary judgment as well as its motion to drop two of the defendants.

## Background

The following facts are undisputed unless otherwise noted. The dispute before the Court is largely centered on the consequences of a transaction in which Hinduja Global Solutions, Inc. (HGSI) and affiliated entities sold a 100% interest in their healthcare services business and certain assets, contracts, and employees that comprised their healthcare-related business to the Baring defendants (the Baring transaction).

The Baring defendants—Betaine (US) BidCo, Inc., Betaine (US) Holdings, Inc., Betaine (US) Acquisitionco Inc., and Sagility Operations Inc. f/k/a HGS Healthcare Operations Inc.—are affiliates of Baring Private Equity Asia (Baring), a global private equity firm based in Hong Kong. In 2020, Baring investment professionals were approached about participating in an auction process that a global investment bank was conducting on behalf of HGSI. HGSI, with its subsidiaries and affiliates, provides information technology services, back-office support, and other services to clients around the world. The auction was in connection with the divestiture by HGSI and its

2

affiliates of corporate assets comprising their healthcare-focused business. These assets included HGS Healthcare, LLC. HGS Healthcare was a wholly owned subsidiary of HGS USA, and HGS USA was a wholly owned subsidiary of HGSI.

During the course of due diligence into the sales assets, Baring became aware of litigation in Texas state court between Synergy—the plaintiff in this case—and HGSI. In December 2019, Synergy sued HGSI in Texas seeking commissions it claims it is owed under alleged broker agreements to which Synergy and various HGSI affiliates were counterparties. The representative written broker agreement in the Texas litigation and before this court (the Broker Agreement) includes a clause stating that

> [t]his Agreement . . . will survive in the event that either party is bought or sold, or any other event that triggers a change in control of a party. Any company or entity that acquires a party will assume and be bound to the terms and conditions of this Agreement.

Pl.'s Resp. and Cross Mot., App'x, Ex. 8 at 2. Synergy and HGSI are the only signatories to this written agreement. Synergy later added HGS Healthcare, LLC as a defendant in the Texas litigation and contends that the Broker Agreement was at some point assigned by HGSI to HGS Healthcare. Disputes about whether the Broker Agreement is valid and whether the agreement was assigned to HGS Healthcare are being litigated in the Texas action.

Baring and its affiliates still participated in the auction process and submitted a successful bid that valued the sale assets at 1.2 billion dollars. Baring and HGSI negotiated the terms and scope of the transaction. These negotiations included apportionment of, and responsibility for, liabilities to Synergy associated with any alleged broker agreements and with the Texas litigation. The structure and terms of the transaction were memorialized in a Master Framework Agreement, US Transfer

Agreement, and other constituent documents (the transaction documents).  In the Master Framework Agreement, the parties to the Baring transaction agreed that "Excluded Broker and Commission Liabilities" includes:

> (i) any liabilities or obligations arising under the broker agreement with Synergy Global Outsourcing, LLC ('Synergy') dated January 1, 2010 in relation to Humana, Inc. (the 'Broker Agreement') or any other obligation of HGS Healthcare, LLC to Synergy or any of its affiliates in respect of HGS Healthcare LLC's business relationship with Humana, Inc., (ii) any liabilities or obligations arising from the lawsuit, Cause No. DC-19-20539 in the District Court 191st Judicial District, Dallas County, Texas, against HGS Inc. and HGS Healthcare, LLC.

Defs.' Stmt. of Add'l Material Facts, Ex. 5 at 11.  The transaction documents also included an additional agreement—referred to by the parties in this case as the "indemnity agreement" or the "assumption agreement"—that includes a provision stating that HGSI

> shall indemnify, defend and hold [the Baring defendants] harmless from and against any and all losses, damages, liabilities, obligations, penalties, claims, actions judgments, suits, costs, expenses, and disbursements of any kind or nature whatsoever . . . resulting from (i) the Synergy Litigation, the Mesilla Litigation, the Broker Agreement or any other alleged obligation of HGS Healthcare to Synergy or any of its affiliates in respect of HGS Healthcare's business relationship with Humana, Inc.
>
> . . .
>
> [And that HGSI] agrees and acknowledges . . . that any past, present or future liabilities or obligations allegedly arising under the Broker Agreement, any other alleged obligation of HGS Healthcare to Synergy or any of its affiliates in respect of HGS Healthcare's business relationship with Humana, Inc. . . . shall be borne, assumed and retained by [HGSI].

Defs.' Stmt. of Add'l Material Facts, Ex. 20 at 2.

The transaction was announced in August 2021 and closed on January 6, 2022.  When the transaction closed, HGS Healthcare was no longer owned by HGSI or its subsidiary, HGS USA.  It had been sold to the Baring defendants and is owned by

4

Sagility Operations Inc. f/k/a HGS Healthcare Operations, Inc.—a "Baring defendant" in this case.

Synergy initiated this suit on October 22, 2021, between the signing and closing of the Baring transaction. In Count 1 of its complaint, Synergy seeks a declaratory judgment that any contractual obligations or liabilities owed by HGS Healthcare to Synergy under the Broker Agreement or other agreements will continue and remain unaffected by the sale to the Baring defendants and that any subsequent reorganization will not materially impact Synergy's rights under the Broker Agreement or other agreements or any potential judgment in the Texas case. In Count 2, Synergy alleges a violation of the Illinois Uniform Fraudulent Transfer Act in connection with the sale of HGS's assets.

In an earlier opinion addressing a motion to dismiss, the Court declined to exercise jurisdiction over Count 1 except to the extent it seeks an adjudication concerning "the *current* relationship between Synergy and the other contracting party—specifically, whether the entity or entities that acquired [HGS Healthcare's] assets are liable on an ongoing basis to Synergy under the Broker Agreement or other agreements it might have had with HGS [Healthcare]." *Synergy Glob. Outsourcing, LLC v. HGS Healthcare Operations Inc.*, No. 21 C 5652, 2022 WL 3357275, at *2 (N.D. Ill. Aug. 14, 2022). The Court also stayed proceedings on Count 2 under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), based on the pendency of the Texas case.

The Baring defendants and HGS USA, LLC have now moved for summary judgment on Count 1 or, alternatively, to stay litigation on that Count until the Texas

5

litigation is resolved. Synergy has moved to dismiss Betaine (US) Acquisitionco Inc. and HGS USA, LLC from Count 1 and filed a cross motion for summary judgment regarding the other defendants on that claim.

## Discussion

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can satisfy this burden by pointing to specific evidence showing the absence of a genuine issue of material fact or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018). Not all facts are material; to avert summary judgment a dispute must involve facts which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in their favor. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). A grant of summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Baring defendants and HGS USA have moved for summary judgment against Synergy on the declaratory judgment claim in Count 1. Synergy has filed a cross-motion for summary judgment on Count 1 against all of the Baring defendants

6

except Betaine (US) Acquisitionco Inc. As indicated earlier, Synergy has moved to voluntarily dismiss Betaine (US) Acquistionco Inc. and HGS USA from Count 1 under Federal Rule of Civil Procedure 41(a)(2). The Court first addresses the two pending cross-motions that involve the Baring Defendants and Synergy before turning to HGS USA's motion for summary judgment and Synergy's motion to dismiss.

**A.  The Baring defendants**

The Baring defendants contend that there is no genuine issue of material fact regarding their lack of obligation to Synergy. They argue that under Illinois law, a corporation that purchases the assets of another corporation does not acquire the transferor's debts or liabilities unless it agrees to do so. The Baring defendants contend that the transaction documents not only demonstrate that they did not agree to acquire any potential obligations HGS Healthcare had to Synergy but also show that any such liabilities were retained and assumed by HGSI and expressly disclaimed by the Baring defendants. The Baring defendants also contend that they are entitled to summary judgment because Synergy has not presented any evidence to support the claim that HGS Healthcare assumed the obligations in the Broker Agreement from HGSI.

Synergy, in its response and cross motion for summary judgment, argues that the general rule of corporate successor non-liability that applies to asset sales does not protect the Baring defendants because the ownership of HGS Healthcare was transferred through an equity purchase. As such, Synergy contends that HGS Healthcare retained any obligations owed to Synergy and that the Baring defendants implicitly assumed them. Synergy also argues that although the Master Framework Agreement defines "Excluded Broker and Commission Liabilities," it does not do

7

anything with those liabilities, and that the existence of the indemnity agreement acknowledges that HGS Healthcare has potential liabilities to Synergy and does not absolve it of those liabilities.

Synergy's contentions lack merit; the Baring defendants have demonstrated that they are entitled to judgment as a matter of law. As an initial matter, however, the Court notes that it does not base this determination on the Baring defendants' argument that Synergy has failed to produce any evidence that HGSI assigned the Broker Agreement to HGS Healthcare. The Baring defendants refused to comply with discovery requests that would have produced such evidence, if it exists, contending it was outside the scope of the claim that survived the Court's order on the motion to dismiss. Summary judgment on this basis is therefore inappropriate.

Rather, the Baring defendants are entitled to summary judgment because, under Illinois law, potential liabilities that HGS Healthcare may have had to Synergy did not transfer to the Baring defendants during the Baring transaction. "The well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45, 688 N.E.2d 1172, 1175 (1997). Synergy contends that the general rule does not apply because the US Transfer Agreement reflects that the ownership of HGS Healthcare was transferred from HGSI through HGS USA and to the Baring defendants. Synergy asserts that it was a straightforward acquisition through the purchase of all of HGS Healthcare's membership interests and contends that "[a] mere sale or purchase of stock does not eliminate the corporation's debts and obligations because the legal entity remains the same." Pl.'s Resp. and Cross Mot. at 8 (quoting

8

*Sinquefield v. Sears Roebuck & Co.*, 209 Ill. App. 3d 595, 597, 568 N.E.2d 325, 326 (1991)).

The evidence establishes that the Baring transaction was not a stock sale. Rather, it was an asset sale in which the Baring defendants negotiated with HGSI to acquire a variety of its healthcare-related assets, leaving HGSI's non-healthcare business intact. The membership interest in HGS Healthcare was one such healthcare-related asset. The US Transfer Agreement effectuates one component of that asset sale and indeed acknowledges the Master Framework Agreement that binds the selling and purchasing entities. These circumstances are quite distinct from *Sinquefield v. Sears Roebuck & Co.*, on which Synergy relies. In *Sinquefield*, the selling entity was the same entity that was wholly purchased—there were no other written companion agreements, no other assets were involved, and the parties did not negotiate and allocate the distribution of liabilities. *Sinquefield*, 209 Ill. App. 3d at 597-98, 568 N.E.2d at 326-27.

There are four exceptions to the general rule of nonliability for debts in an asset purchase, at least two of which specifically address transactions that improperly purport to be asset sales:

> (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Vernon*, 179 Ill. 2d at 345, 688 N.E.2d at 1175-76. Because Synergy contends that the Baring transaction was not an asset sale and the law of successor liability does not apply, it does not argue in exactly these terms. But even if the Court construes

9

Synergy's claims to include a contention that the Baring transaction falls into an exception to the general rule of corporate successor nonliability, the Baring defendants would still be entitled to summary judgment.

Synergy contends that the Baring defendants impliedly agreed to assume HGS Healthcare's liabilities because the Broker Agreement between Synergy and HGSI includes a clause stating that it "will survive in the event that either party is bought or sold, or any other event that triggers a change in control of a party," and "[a]ny company or entity that acquires a party will assume and be bound to the terms of this Agreement."  Pl.'s Resp. and Cross Mot., App'x, Ex. 8 at 2.  Synergy argues that because the Baring defendants learned of the Texas litigation and related Broker Agreement, agreed to the purchase anyway, and entered an indemnity agreement related to potential liabilities, there was mutual understanding and intent to impliedly assume liabilities, including liabilities under the Broker Agreement.

This argument lacks merit.  The transaction documents clearly show that the Baring defendants expressly disclaimed any potential liability to Synergy in both the Master Framework Agreement and the assumption agreement, and HGSI affirmatively retained and assumed it in the assumption agreement.  Synergy contends that the Master Framework Agreement included potential liabilities to Synergy in the definition of "Excluded Broker and Commission Liabilities" but did not actually do anything with those liabilities.  But read in the context of the whole Master Framework Agreement and the other transaction documents, it is clear that the parties were agreeing that those liabilities would be excluded.  Accepting the argument that the transaction documents simply did not allocate the potential obligations would be "contrary to the plain and

obvious meaning of the language used." *Thompson v. Gordon*, 241 Ill. 2d 428, 442, 948 N.E.2d 39, 47 (2011). Nor does the adoption of an indemnity agreement evince intent by the Baring defendants to assume potential liability—at most, it is a backup measure for their express disclaimer, not an assumption of liability.

Even assuming HGSI assigned the Broker Agreement to HGS Healthcare, the existence of the "change of control clause" does not make the Baring defendants liable or otherwise require that they impliedly contracted for HGS's liability. In *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987) (per curiam), the Seventh Circuit addressed a similar contention. The plaintiff had an employment contract stating that "in the event that Employer shall sell all or substantially all of [its] assets . . . this [a]greement shall be binding upon any such successors." *Id.* The employer company was purchased, and Shaw sought damages on the contract from the purchasing company. The Seventh Circuit acknowledged the four exceptions to nonliability and concluded that the plaintiff was asking the court "to create a fifth exception to the general rule in order to enforce the contract against the purchasing corporation." *Id.* The court "decline[d] appellant's invitation to create a fifth exception in Illinois to the general rule of nonliability." *Id.* Synergy makes the same request in this case, and the Court similarly declines to create a fifth exception to enforce the underlying contract against the purchasing Baring defendants. The traditional successor nonliability rule is meant to "protect bonafide [sic] purchasers from unassumed liability" and "maximize the fluidity of corporate assets." *Vernon*, 179 Ill. 2d at 345, 688 N.E.2d at 1175 (internal quotations omitted). In this case, it would contravene the purpose of the rule and its delineated exceptions to bind a successor corporation to unassumed liabilities based on

11

the language of a contract to which it was not a party.

The Baring transaction also does not fit into de facto merger or continuity exceptions to nonliability. The continuity exception is premised on continuity of ownership. *See Myers v. Putzmeister, Inc.*, 232 Ill. App. 3d 419, 424, 596 N.E.2d 754, 757 (1992). That plainly is not satisfied in this case. There are four criteria necessary to establish the existence of a de facto merger under Illinois law, all of which must be present. *Id*. at 423-24. One of the criteria is that "[t]he seller corporation ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible." *Id.* at 423. Because the selling corporation, HGSI, has not ceased ordinary business operations, liquidated, or dissolved, this criterion is not met, and thus the de facto merger inquiry need go no further.

In sum, Synergy has not provided a legitimate basis for the Court to abandon the general rule of successor nonliability or to disregard the express allocation of potential liabilities to Synergy reflected in the transaction documents. The Baring defendants have met their burden of establishing the absence of any genuine dispute of material fact regarding their lack of obligation to Synergy and entitlement to judgment as a matter of law.

The Court accordingly grants the Baring defendants' motion for summary judgment—and denies Synergy's cross motion—on Count 1. The grant of summary judgment for the Baring defendants includes Betaine (US) Acquisitionco Inc. even though Synergy moved to dismiss it from Count 1, as further explained below.

**B.    HGS USA**

HGS USA has separately moved for summary judgment against Synergy on

different grounds from those cited by the Baring defendants.  Because the Court limited the declaratory judgment claim to adjudication of issues regarding the current liabilities to Synergy of the entity or entities that acquired HGS Healthcare, HGS USA, as the previous owner of HGS Healthcare, argues that Count 1 cannot apply to it.  Specifically, HGS USA contends that Synergy has neither asserted nor developed in discovery any theory of liability against HGS USA with respect to Count 1.  It notes that Synergy has not alleged or developed evidence of any legal relationship with HGS USA, let alone obligations under the Broker Agreement.  And even accepting Synergy's theory of the case, HGS USA argues, any obligations under the Broker Agreement lie with the Baring defendants, not HGS USA.  HGS USA thus concludes that there is no "'definite and concrete,' 'real and substantial' dispute that 'touches the legal relations of parties having adverse legal interests'" such that a declaratory judgment would be appropriate.  HGS USA's Mem. of Law in Supp. of Mot. for Summ. J. at 4 (quoting *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019)).

Rather than respond to the substance of HGS USA's motion, Synergy moved to voluntarily dismiss Count 1 against HGS USA under Rule 41(a)(2), to "streamline and simplify" the proceedings.  Pl.'s Mot. to Dismiss at 1.  Synergy similarly moved to dismiss Betaine (US) Acquisitionco Inc., a Baring defendant, from Count 1 in the same motion and for the same reason.

As an initial matter, the Court notes that Rule 41(a) "does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'—which is to say, the whole case." *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (quoting *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir.2001)).  Because Synergy only seeks to

dismiss HGS USA and Betaine (US) Acquisitionco Inc. from Count 1, Rule 41(a) is not the proper vehicle. Instead, Synergy should have moved the Court for leave to amend its complaint under Rule 15(a)(2) and drop these two entities as defendants. *See Taylor*, 787 F.3d at 858. Rule 15(a)(2) states that at this stage in the litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Whether reviewed under Rule 15(a) or 41(a), "the same considerations are relevant to dropping the claim regardless of which rule is invoked," and in this case dismissal is not justified. *Diaz v. Ameriquest Mortgage Co.*, No. 05 C 7097, 2014 WL 26265, at *2 (N.D. Ill. Jan. 2, 2014) (quoting 6 Charles Allen Wright et al., *Federal Practice and Procedure* § 1479 (3d ed. 2012)); *see also Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1364 (Fed. Cir. 2000) ("Rules 41(a)(2) and 15(a) are functionally interchangeable"). Under either rule, Courts consider delay by the movant, undue prejudice to the non-movant, motive and sufficiency of the explanation, and the expense of preparation for trial. *See Diaz*, 2014 WL 26265, at *3 (collecting cases); *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969).

In support of its motion, Synergy states simply that dismissal would streamline and simplify the proceedings. This is not a sufficient basis for the Court to grant leave to amend (or dismissal of the two defendants) at this stage in the litigation. HGS USA and Betaine (US) Acquisitionco Inc. have endured the expense of discovery and trial preparation and have submitted reasoned arguments in support of their motions for summary judgment. As a Baring defendant, Betaine (US) Acquisitionco Inc. has

demonstrated that it is entitled to judgment as a matter of law, as described earlier. HGS USA has done the same, pointing out an absence of support for a claim by Synergy against it and essentially contending that there is no evidence of a justiciable case or controversy between it and Synergy. Synergy has offered no rebuttal to these arguments and pointed to no evidence to support its claim. The Court thus declines to "deprive [HGS USA and Betaine (US) Acquisitionco Inc.] of a ruling on the summary judgment motion by [Synergy's] dismissal tactic." *Pace*, 409 F.2d at 334.

Accordingly, the Court grants HGS USA's motion for summary judgment against Synergy on Count 1 and denies Synergy's motion to dismiss Betaine (US) Acquisitionco Inc. and HGS USA from Count 1.

## Conclusion

For the foregoing reasons, the Court grants the Baring defendants' motion for summary judgment on Count 1 [dkt. no. 153] and HGS USA's motion for summary judgment on Count 1 [dkt. no. 158] and denies Synergy's cross motion for summary judgment [dkt. no. 164] as well as its motion to dismiss certain defendants [dkt. no. 163]. The parties are directed to file a joint status report on August 16, 2024 describing the current status of the Texas litigation and the parties' proposals for how the remainder of this case should be handled. A telephonic status hearing is set for August 22, 2024 at 9:10 AM, using call-in number 650-479-3207, access code 980-394-33.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 9, 2024